## Cody et al., Appellants, v. Venzie.

*Negligence—Carriage of passenger—Degree of care—Charge of court—Case for jury.*

1. In Pennsylvania degrees of negligence have long been recognized.

2. The measure of liability of one who undertakes to carry gratis is the same as one who undertakes to keep gratis.

3. On a gratuitous carriage for the sole benefit of the guest, the law requires only slight diligence and makes the carrier responsible only for gross neglect; if for the benefit of the carrier it requires great diligence and makes the carrier responsible for slight neglect; and if for the benefit or pleasure of both parties, it requires ordinary diligence and makes the carrier responsible for ordinary neglect.

4. Where men may honestly differ on the question as to whether or not an act is negligent, the matter is ordinarily one for a jury to determine.

5. Semble, it is wise to charge a jury on questions of negligence by stating to them what were the rights and duties of the parties,

without the use of the words "gross," "ordinary" or "slight," at the same time explaining to them why the law is so.

Argued Jan. 21, 1919. Appeals, Nos. 137 and 138, Jan. T., 1919, by plaintiffs, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1913, No. 1716, on verdict for defendant in case of Florence M. Cody and George A. Cody v. Frederick M. Venzie. Before STEWART, MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before McMICHAEL, P. J.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Victor Frey,* with him *Augustus Trask Ashton,* for appellants.

*W. W. Smithers,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, February 10, 1919:

As the court below gave binding instructions for defendant, we must assume all the facts favorable to plaintiff to be true, and in that light we shall state them.

Defendant having occasion to go to Salem and then to Vineland, New Jersey, and desiring to take his wife along, at her request invited plaintiffs, who are her sister and brother-in-law, to accompany them. The journey was made in a Ford automobile, owned and driven by defendant. On the return from Vineland they were using a route with which defendant was not familiar, and were looking for the signboards designating the turns to be made in order to reach Camden. As they

were going down hill at the rate of twenty-five or thirty miles an hour, defendant's wife saw a signboard, which pointed out to them that the way to Camden was along a road which crossed at right angles the one on which they were traveling; she announced the fact, and defendant, without reducing the speed, at once turned his car into the new road; it upset, turned over several times, and his sister-in-law received the injuries which resulted in the present suit. Defendant's wife, who was called as a witness for him, testified that she thought he was going too fast to turn the corner in safety. The highway upon which they had been traveling continued straight on, and defendant could have used it until the speed was reduced, and then turned around and more slowly entered the new road.

The trial judge being of opinion that wanton and wilful negligence was necessary to sustain the action, and had not been shown, directed a verdict for defendant; the court in banc agreed with him, judgment was entered on the verdict, and plaintiffs appealed. At the argument in this court, counsel for appellee,—whose presentation of the case deserves high commendation,—asked us to clearly set forth in our opinion whether or not different kinds or degrees of negligence are recognized in the law of this State: and, if they are, what are the rights and liabilities of carriers of passengers under the varying relations which arise.

Until that request was made, we had not supposed there was any doubt as to the answer to the first of these questions. Exactly when the equivalents for "gross negligence," "ordinary negligence" and "slight negligence" first appeared in jurisprudence is not now known, but it certainly dates well back into the Roman law. From the great opinion of Lord Holt in Coggs v. Bernard, 2 Lord Raymond 909 (1703), it is clear these expressions were well known to the common law lawyers and jurists of his day, and were derived from the culpa lata, culpa levis and culpa levis-

sima of the civil law. That case has been repeatedly cited and followed in our courts (First National Bank of Carlisle v. Graham, 79 Pa. 106, 116; Shultz v. Wall, 134 Pa. 262, 272) ; and any one who will read the opinions therein, and those relating to the standard of care required of common carriers for hire (Meier v. Penna. R. R. Co., 64 Pa. 225; McBride v. McNally, 243 Pa. 206), of gratuitous bailments for the sole benefit of the bailee (Todd v. Figley, 7 W. 542, 544), of gratuitous bailments for the sole benefit of the bailor (Tompkins v. Saltmarsh, 14 S. & R. 275; Hibernia Building Association v. McGrath, 154 Pa. 296), and of licensees (Kay v. Penna. R. R. Co., 65 Pa. 269; Pittsburgh, Fort Wayne & Chicago Railway Co. v. Collins, 87 Pa. 405; Devereux v. Phila. & Reading Railway Co., 245 Pa. 136), will conclude that these terms are too deeply planted in our system of jurisprudence to be easily uprooted.

It is true there are courts and textwriters who agree with 1 Thompson on Negligence, Section 18, wherein it is said: "I confess myself careless, ignorant and indifferent upon this whole subject of the degrees of negligence. It is plain that such refinements can have no useful place in the practical administration of justice. Negligence cannot be divided into three compartments by mathematical lines. Ordinary jurors, before whom, except in cases of admiralty, actions grounded on negligence are always tried, are quite incapable of understanding such refinements......The sound view is that the classification of negligence as gross, ordinary and slight, indicates only that, under special circumstances, great care and caution are required, or only ordinary care, or only slight care. If the care demanded is not exercised, the case is one of negligence, and a legal liability is made out when the failure is shown." Whether there are three or more or less kinds or degrees of negligence, however, and whether there is a distinction between "kinds" and "degrees" as Thompson suggests (Ibid., Section 21), is wholly beside the question we are now con-

sidering. It must be admitted that the term "slight negligence" is inadequate to express the different kinds of negligence often grouped thereunder; as witness the cases of an ordinary bailment for the benefit of the bailee, of a common carriage of passengers for hire, and of a common carriage of goods for hire, for each of which a different standard exists. Nor would the difficulty be much lessened if the term were subdivided into "slight negligence," "slighter negligence" and "slightest negligence," for no one would know what "slighter negligence" meant, unless some other negligence, regarding which it was "slighter," was first defined or explained. A translation of those expressions into terms of care would not remove the difficulty, for if "great care," "greater care." and "greatest care" were used, some other kind of care would have to be defined or explained before "greater care" could be understood. But, after all, the essential fact remains, there are kinds or degrees of negligence and care, which in ordinary parlance may be conveniently used, however difficult it may be, owing to the inadequacy of the English language, to phrase some of them for practical use with juries.

In Cohen v. Tradesmen's National Bank, 262 Pa. 76, 78, we decided an action of negligence could not be maintained unless defendant owed some duty to plaintiff, either individually or as one of the general public. Hence, as the duty varies the standard of care must vary, and in turn the kinds or degrees of negligence must vary. As carriers may be properly classified according to the relation which exists between them and their passengers or guests, so the duty which carriers owe to their passengers or guests may likewise be classified. On grounds of public policy, a carrier for hire owes to his passengers a duty of the greatest care, for he is paid to carry safely. Gratuitous carriers are, however, in an entirely different category. In England and in this country, and in the courts which recognize and in those which do not recognize kinds or degrees of negligence,

"the measure of liability of one who undertakes to carry gratis, is the same as that of one who undertakes to keep gratis" (Massaletti v. Fitzroy, 228 Mass. 487, and cases cited therein); and hence from the well settled law on the subject of bailments we may ascertain and define the duty which the gratuitous carrier owes his guest.

In First National Bank of Carlisle v. Graham, 79 Pa. 106, 116, and again in Woodruff v. Painter, 150 Pa. 91, 96, we quoted with approval from Story on Bailments: "When the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, and of course makes him answerable only for gross neglect. When the bailment is for the sole benefit of the bailee, the law requires great diligence on the part of the bailee, and makes him responsible for slight neglect. When the bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect." It follows, therefore, that when a gratuitous carriage is for the sole benefit of the guest, the law requires slight diligence and makes the carrier only responsible for gross neglect; if it is for the sole benefit of the carrier the law requires great diligence and makes the carrier responsible for slight neglect; and where it is for the benefit or pleasure of both parties, as in the instant case, it requires ordinary diligence and makes the carrier responsible for ordinary neglect.

We believe, however, for the reasons hereinbefore suggested,—though the matter is wholly foreign to the present case,—that justice would be better administered, and incidentally a better citizenship result, if juries were specifically told what were the duties and liabilities of the parties, without laying stress on the words, "great," "ordinary," or "slight," at the same time telling them why the law is so. A dogmatic statement as to what the law is, without stating the reason why it is so, receives but little heed from one who does not understand why he should as a man, and should not as a juryman, give effect

to his natural sympathy for those in distress; and his antagonism is not lessened by also dogmatically informing him, without explanation, that it is his duty to take the law from the court, or, almost equally useless unless the reason is given, that sympathy should not be considered in deciding the case. Inasmuch as the reason and spirit of the law is the life of the law, the course suggested would also tend to a better appreciation of the law by the judges themselves, and would aid in producing that uniformity and certainty so much needed in these days when attacks are made upon the law for no other reason than that it restrains unlawful conduct.

It follows from what has been said, that the court below was clearly right in treating the case as one different from that of a carrier for hire; but it erred when it held that plaintiffs could not recover except upon proof of "wanton and wilful" negligence, which is different even from gross negligence: 1 Thompson on Negligence, Section 20; and also when it decided there was not sufficient evidence on the real question in issue, to submit it to the jury. We cannot say, as a matter of law, that defendant was exercising ordinary care when he turned his Ford car at right angles while running down hill at a speed of twenty-five or thirty miles an hour. Some men might believe that it would be safe so to do, while others, equally honest, would believe the contrary. Whether those who so believed would be reckless, or those who did not would be over-cautious, is a matter for the jury to determine. Whether the fact that the Ford automobile is a light vehicle affects the question; whether ordinary care did not require the defendant to run straight ahead, turn around and afterwards proceed on the cross-road; whether he made the turn because of something said or done by plaintiffs; and whether his wife's suddenly calling attention to the signboard threw him off his guard; are also matters for the jury and not for the court. The evidence on the retrial may also raise other questions proper for their consider-

ation upon the point at issue. If upon the whole case the jury should find that defendant was guilty of a want of ordinary care, to which plaintiffs did not contribute, they should find a verdict for plaintiffs; otherwise they should find a verdict for defendant.

The judgment of the court below is reversed and a venire facias de novo awarded.