Lazor et al., Appellants, *v.* Banas.

426

Argued April 20, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Alvin R. Isenberg,* and with him *Nathan Routman,* for appellant.

*Benjamin H. Marks,* for appellee.

OPINION BY JAMES, J., October 3, 1934:

Appellant, Nick Lazor, in his own right and as parent of John Lazor, a minor, filed an action of trespass for personal injuries sustained by his son John Lazor, aged nine years, against John Banas, who conducted a grocery store in Sharpsville. John Lazor, who lived in Sharpsville, was attending the St. Michael's School at Farrell and the defendant also had a child attending the same school. Susie Lazor, mother of John Lazor, in order to avoid changes in travel by street car, made arrangements with John Banas, the defendant, to carry her boy to school and return when he was taking his child, together with some other children who had been travelling with him. For this service defendant was paid the sum of ten cents per day for the days he had transported the minor plaintiff. On the 13th day of June, 1932, Mike Banas, the son of the defendant, was taking the children to the school in a small Ford truck, taking the same route his father had taken on other days. In the cab was the driver with two little girls, and in the rear body of the truck, which was covered with a low canopy, were John Lazor and Andy Chuba, both aged nine years. Attached to the rear body of the truck with chains was a gate or tailboard which could be raised or lowered. On previous occasions the two boys had been directed to sit in the truck at the point where the canopy joined the cab. On the day of the accident, the driver did not direct or examine the position of the boys in the truck or examine the position of the gate or tailboard. While on this journey and travelling in the direction of Sharon, just at the foot of what is known as Jennyburg Hill, John Lazor was either thrown or fell out of the truck and sustained the injuries for which suit was brought.

The trial resulted in a verdict for the plaintiff. A

motion for judgment n. o. v. and a new trial having been filed, the court granted the motion for judgment n. o. v., but did not dispose of the motion for a new trial. From the judgment n. o. v. for the defendant plaintiff has taken this appeal.

Plaintiff's statement alleges seven specific acts of negligence on the part of the defendant and in passing upon the motion for judgment n. o. v. the court below dealt with two phases of the negligence, to wit, (1) In failure to provide proper safeguards for the passengers he was transporting, and (2) In operating the said truck at a high rate of speed under the circumstances.

The testimony of Andy Chuba was somewhat contradictory as in one portion of the testimony he stated that the gate was not closed; later, that it was halfway up; that it was about even with the floor of the truck; that it was not closed and it was down as far as it could be, but his testimony must be taken in connection with the fact that the chains attached to the tailboard were to be hooked on to the sides of the truck, and that although the tailboard was not closed, it was as far down as the length of the chains would permit the gate or tailboard to go. The court below held that the mere fact of failing to have the end gate up would not be sufficient to charge defendant with negligence unless it appeared this was the proximate cause of the boy's falling out. With this we agree as the testimony does not disclose that the failure to put up the gate at the rear of the truck was the proximate cause of the injury. Neither are we persuaded, nor was the court below, that the allegation that the truck was being operated at a high rate of speed was sufficiently established but we do believe the evidence was sufficient upon which to submit the case to the jury on the allegation of negligence in operating said truck

without due regard for the rights, safety and position of the minor plaintiff.

When the defendant undertook to transport the minor plaintiff, his duty did not end in placing him in the rear of the truck. He still owed him the duty of operating the car at such a rate of speed and in such a manner as under ordinary circumstances no injury could befall him. It was hardly to be expected that a child nine years of age would remain under a closed canopy away from light and air but that in the natural course of events, a child of such tender years would move toward the rear gate or tailboard and, in so doing, would be more easily thrown from the truck. If the testimony of Andy Chuba is to be believed, the car was operated so as to cause not only the minor plaintiff to be thrown out but also caused the witness to be thrown about with sufficient force to cause a bump on his head. True it is that the witness testified at one point that the minor plaintiff was sitting by the gate and later that he was sitting on the gate but these inconsistencies and contradictions were for the jury. It naturally follows that if the boy was sitting by the gate it would require more force to expel him from the truck than if he was sitting on the gate. But the questions whether the gate was up or down, and whether the minor plaintiff was sitting by the gate or on the gate, were to be considered in determining whether said truck was operated without due regard to the rights, safety and position of the minor plaintiff and if the jury believed that when the car reached the foot of the hill the driver increased its speed over the rough road, and as a result thereof the minor child was thrown from the car, it was sufficient from which the jury could find the defendant liable. Under all the testimony, we are convinced it was a question for the jury.

The motion for judgment n. o. v. having been en-

tered, no disposition was made of the motion for a new trial. In view of our decision that judgment n. o. v. was improperly entered we have considered the reasons assigned for a new trial.

In his charge to the jury, the court below stated, "Now, the defendant here by his agent had taken this boy and was transporting him from his home to school and back again, and it was his duty to exercise the highest degree of care, when he had taken a passenger for hire," and also affirmed plaintiffs' fourth point as follows: "A carrier of passengers for hire owes the highest degree of care to its passengers and will be liable for the slightest negligence." The rule of responsibility which was applied by the court was the rule which applies to a common carrier of passengers but the facts in the present case do not disclose that the defendant was a common carrier. "A common carrier of passengers is one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusing. A public, common carrier of passengers is distinguished from private carriers by the franchises conferred upon it, and the obligations, restrictions, and liabilities with which it is charged, all flowing from considerations of public policy. It must carry all alike, and for a reasonable compensation furnish reasonable accommodations, must continuously operate its line, and must submit to reasonable regulations." 4 R. C. L. 1000, Sec. 468. In numerous decisions of this court, the latest of which is Aronimink Trans. Co. v. P. S. C., 111 Pa. Superior Ct. 414, 170 A. 375, we have uniformly held that the test of a common carrier is one who undertakes to carry for hire all persons indifferently who apply for it. Applying this rule to the facts in this case, the defendant was not a common carrier but a private carrier under a special contract. However, in determining

liability, whether defendant was a common carrier or a private carrier is not always determinative of the question. In McBride v. McNally, 243 Pa. 206, 210, 89 A. 1131, the court said, "If, for technical reasons, he is to be excluded from the class of common carriers, such fact will not exempt him from the measure of liability which the law imposes on these. The rule with respect to the liability of common carriers has very wisely been extended so as to include all engaged in the transportation of passengers when such transportation is attended with danger to life or limb, and the care and diligence is proportionate to the danger to the person carried." But in the instant case defendant was not in the broad sense engaged in the transportation of passengers but, for a nominal sum, as a matter of convenience to the minor, transported him with his own child and other children to and from the school. Under these facts the relation of the parties was that of private carrier.

The rule of liability as to private carriers of passengers has been rarely dealt with in the opinions of the courts of our state. In Neumiller v. Acme Motor Car Co., 3 Berks Co. Law Journal 337, 339, in a well considered opinion by ENDLICH, P. J., we find the following rule laid down: "The difference between the two kinds of carriers with respect to their liability for injuries to passengers is that a common carrier is held liable for the very slightest negligence and to a presumption of negligence from the fact of injury to passengers in its charge and not themselves at fault; whilst a private carrier is responsible only for ordinary negligence, the burden of affirmatively proving which is upon him who alleges it."

On grounds of public policy a carrier for hire owes to his passengers a duty of the greatest care for he is paid to carry safely, (Cody v. Venzie, 263 Pa. 541, 107 A. 383) but this rule applies to what is classified

as common carriers or those engaged in the transportation of passengers. In Cody v. Venzie, supra, (p. 546) in an opinion by Mr. Justice SIMPSON, the degrees of negligence were very fully dealt with, in the course of which opinion the following rule was laid down: "It follows, therefore, that when a gratuitous carriage is for the sole benefit of the guest, the law requires slight diligence and makes the carrier only responsible for gross neglect; if it is for the sole benefit of the carrier the law requires great diligence and makes the carrier responsible for slight neglect; and where it is for the benefit or pleasure of both parties, ...... it requires ordinary diligence and makes the carrier responsible for ordinary neglect." The facts in the instant case clearly show that the carriage was for the mutual benefit of the plaintiff and the defendant. In order to avoid having her son travel by street car, the mother contracted with the defendant to pay him the nominal sum of ten cents per day for transporting her child. Applying the rule as laid down by Mr. Justice SIMPSON, we believe the correct rule is that defendant was responsible for ordinary negligence and the court erred in charging the jury that the defendant was required to exercise the highest degree of care.

The judgment is reversed and the record is remitted with instructions to make the rule for a new trial absolute.