## Lehman v. Lebanon Coach Co.

C.P. of Lebanon County, no. 1989-01796.

*Kenneth C. Sandoe,* for plaintiffs.

*Timothy J. Abeel* and *Jon Michael Dumont,* for defendant Lebanon Coach.

*Christopher J. Coyle,* for defendant McKinney.

EBY, *P.J.,* December 1, 1998—In this case, which began in 1989, plaintiffs assert that the negligence of defendants in January of 1988 caused the minor plaintiff to lose her right leg. The minor plaintiff, a 15-year-old school student, had disembarked from a public transit bus owned by County of Lebanon Transportation Authority (COLT) and operated by Lebanon Coach Company and was crossing a street to get to her school when a car operated by Beth McKinney struck her, pinning her to the bus from which she had disembarked. The bus was operated by Lebanon Coach under a contract with COLT.

Plaintiff and her parents sued Beth McKinney, Lebanon Coach, COLT, the City of Lebanon, the Lebanon School District, and the Pennsylvania Department of Transportation. Lebanon Coach, learning that COLT's insurance carrier did not consider that it had a duty to defend the company, filed a declaratory judgment action asking us to order the carrier to defend the suit. (Action no. 90-01366.) The insurance carrier for Lebanon Coach joined in that suit, asking us to determine that it was not required to defend the suit. We determined that neither the carrier for Lebanon Coach was required to defend Lebanon Coach nor the carrier for COLT was required to defend. On appeal, the Superior Court reversed in part, holding that the insurance company covering COLT had an obligation to defend Lebanon Coach, as the claims made against Lebanon Coach fell within the coverage provided by the policy it had issued to COLT. *Lebanon Coach Co. v. Carolina Casualty Insurance Co.,* 450 Pa. Super. 1, 675 A.2d 279 (1996).

The government entities sued by the Lehmans in this matter then filed motions asking us to dismiss them from the case, contending state law immunized them from liability. We agreed, finding that the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8541, prevented plaintiffs from recovering damages from PennDOT, COLT, the City of Lebanon and the Lebanon School District. Our holding was affirmed on appeal, the Commonwealth Court holding that the acts claimed by plaintiffs to subject these governmental entities to liability did not fall within the exceptions of the Tort Claims Act. *Lehman v. County of Lebanon Transportation Authority,* 143 Pa. Commw. 416, 599 A.2d 259 (1991).

Both the plaintiffs and defendant Lebanon Coach now assert that all the material facts of the matter are established, and those facts enable us to grant judgment as a matter of law. Plaintiffs assert that the facts entitle them to judgment. Lebanon Coach asserts that the facts entitle the company to judgment. In order to determine which, if either, of these conflicting assertions is correct, we must review the record briefly.

The plaintiff asserts that she was a minor on January 11, 1988, when she boarded a public transit bus. She paid her fare and rode the bus to the bus stop near the intersection of Cornwall Road and Hauck Street in Lebanon.

Plaintiff had ridden this public transit route on numerous prior occasions. The place where plaintiff got off on this fateful day was a regular stop on the bus route and a location where the bus always stopped to allow passengers to disembark. Plaintiff exited the front door of the bus along with several other passengers.

Plaintiff then walked north on the public sidewalk bordering Cornwall Road to a point behind the stopped bus. She stepped into the marked crosswalk to look

for traffic in order to cross Cornwall Road to get to her school, Lebanon High School. At that point, a car driven by Beth McKinney (now Beth Bittner) turned right from Hauck Street onto Cornwall Road and struck plaintiff, pinning her between the McKinney car and the end of the stopped bus, which resulted in the amputation of her right leg.

Plaintiffs take the position that Lebanon Coach Company was responsible for placing the minor plaintiff at the accident site, and had a duty to ensure her safe travel to the other side of Cornwall Road. Since Lebanon Coach failed in its duty, plaintiffs argue, Lebanon Coach is liable to them. In the alternative, plaintiffs argue that Lebanon Coach should have declined to drop the minor plaintiff at the site designated by COLT as the bus stop, knowing that it was a dangerous spot, and should have taken her to a point directly in front of the school in order to ensure her safe travel to the school.

Lebanon Coach does not dispute the above facts. Lebanon Coach, however, takes the position that its duty to plaintiff consisted of transporting her safely on its bus from the site at which she entered it to the site at which she disembarked. What happened to plaintiff after she was on the sidewalk, Lebanon Coach argues, while tragic, is not its responsibility.

The parties have submitted impressive arguments, which incorporate conflicting cases and statutes in support of their positions. We have carefully reviewed the proffered materials, along with other information produced by our own research. We now will briefly synopsize the arguments presented.

Plaintiff cites a number of cases in support of her assertion that the duty of the operator of a common carrier to a passenger begins at the point of her entry

into the vehicle and ends only after her arrival at a safe location. Plaintiff cites *Lehman v. Carolina Casualty; Connolly v. Philadelphia Transportation Co.,* 420 Pa. 280, 216 A.2d 60 (1966); *Cherillo v. Steinberg,* 118 Pa. Super. 485, 180 A. 115 (1935); *Lazor v. Banas,* 114 Pa. Super. 425, 174 A. 817 (1934) and *Philadelphia and Reading Railroad Co. v. Boyer,* 97 Pa. 91 (1881). At oral argument, plaintiffs' counsel suggested to this court that a number of other cases supported his position that a driver's duty to a passenger continues until the passenger, after leaving the vehicle, reaches a place of safety.

We have examined a number of cases on this topic. The first group of cases addresses whether a pedestrian who is struck after leaving a vehicle can be considered a covered person under the vehicle's insurance policy, thus causing the vehicle's insurer to be liable for medical expenses.[1] In *Tyler v. Insurance Company of North America,* 311 Pa. Super. 25, 457 A.2d 95 (1983), the plaintiff was a passenger on a private bus when the driver stopped at a passenger's request and let her and others off along the road. A motorcycle traveling on the right side of the bus hit her. The trial court held that the plaintiff was not a passenger of the bus after she stepped from it, allowing the bus insurer to deny her medical benefits. On appeal, the Superior Court held the plaintiff was still an occupant of the bus when she was hit, as she had not yet severed all connection

---

1. Under the 1974 No-Fault Motor Vehicle Insurance Act, an auto insurer's liability for medical expenses to a pedestrian was unlimited. Under the 1984 revisions to the No-Fault Act, the Motor Vehicle Financial Responsibility Law, the insurer's liability for medical expenses and lost income could be limited to $15,000. Under the most recent revisions to the Financial Responsibility Law, an insurer might be liable for only $5,000 in medical expenses only.

with the bus, as she would have done had she reached the side of the road safely, stating the plaintiff was "vehicle-oriented," not "highway-oriented." The court held that the bus company had a duty to afford plaintiff an opportunity to alight safely, and since the bus stopped five feet from the shoulder of the road, plaintiff was vehicle-oriented until she reached the shoulder. In any event, as the bus was "involved in the accident," its insurance policy was the first source of benefits under the No-Fault law.

In *Walker v. Port Authority of Allegheny County,* 323 Pa. Super. 427, 470 A.2d 993 (1984), the plaintiff was discharged from a transportation authority's bus at a corner. After she left the bus but before she got to the curb, she was struck by a car passing on the right. The trial court held that under the No-Fault Act, the plaintiff was not a passenger of the bus at the time of the accident, and so the transportation authority was not responsible for paying her no-fault benefits. On appeal, the Superior Court held that under the No-Fault Act, when a bus discharges a passenger and the passenger is struck by a car before she can reach the curb or another place of safety, for purposes of the No-Fault Act the bus was "involved in the accident." Since the bus was "involved," the court held that its owner was liable for basic loss benefits.

In *Frain v. Keystone Insurance Co.,* 433 Pa. Super. 462, 640 A.2d 1352 (1994), the plaintiff was getting into a vehicle when she heard another person yell "run," and saw a truck approaching her. She ran from the vehicle and tripped over a flowerbed about three feet away. She asked for benefits from the car's insurer, but was denied. Considering summary judgment motions in the ensuing declaratory judgment action, the trial court held that plaintiff was not an occupant of

the vehicle at the time of the accident and was not entitled to benefits. On appeal, the Superior Court held that because plaintiff had placed her purse in the car and was in the process of entering the vehicle when she ran away from the approaching truck, she was an occupant of the vehicle for purposes of interpreting the insurance company's duty toward her. Plaintiff was in close proximity to the insured vehicle and was "vehicle-oriented" at the time of the accident, the court held. Plaintiff's entering of the vehicle was a transaction essential to its use. Finding that she was an "occupant" of the insured vehicle within the meaning of the insurance policy, the Superior Court overruled the trial court and reinstated plaintiff's case.

Thus, in cases where an insurer declined to pay a person's medical expenses on the grounds that the person was not an "occupant" of the vehicle at the time of the accident, or the vehicle was not "involved in an accident," the Superior Court has held that the term "occupant" must be broadly construed in favor of insurance coverage. We turn to the next group of cases, those addressing the issue of whether an insurance company has an obligation to defend a suit where there is a question of whether its policy covers a claim.

In *State Automobile Insurance Association v. Kuhfahl,* 364 Pa. Super. 230, 527 A.2d 1039 (1987), a child in kindergarten was transported from his school to a street near his home by a private car. When his transporters let him out of their car, he ran across the street and was struck by a passing vehicle. The transporters' insurer sought a declaratory judgment that it did not have to defend, and appealed the trial court's denial of its motion for summary judgment. The Superior Court held that if the facts alleged in the complaint were found to be true and the insurance policy covered the

claimed acts, then the insurer must defend the case. Because the transporters' acts were causally connected with the claimed injury, the policy covered the acts, and the insurer must defend. The court held that the child's location at the time of the injury was directly linked to where the transporters stopped their car. Citing a California case, the court noted:

"The presence of small children in an automobile imposes a particular duty of care and alertness upon the driver in selecting the place for and supervising the manner of discharging the children from the vehicle. The conduct of an ambulatory child of tender years is often impulsive and unpredictable. The process of unloading a child from a motor vehicle does not end the moment that the child's feet touch the ground or when his or her body is entirely outside the vehicle." *National Indemnity Co. v. Farmers Home Mutual Insurance Co.*, 95 Cal.App.3d 102, 157 Cal.Rptr. 98 (1979).

In *Lebanon Coach Co. v. Carolina Casualty Insurance Co.*, 450 Pa. Super. 1, 675 A.2d 279 (1996), the companion to this case, our Superior Court held that the insurer of the transportation authority was required to defend Lebanon Coach in this action, as state law and the contract between the transportation authority and Lebanon Coach required the transportation authority to insure the bus at issue. The court stated that "[w]hether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action." 450 Pa. Super. at 9, 675 A.2d at 283. The court also held that "an insurer's duty to defend is a distinct obligation, different from and broader than its duty to provide coverage." 450 Pa. Super. at 14, 675 A.2d at 286. The court further stated: "If the factual

allegations of the complaint comprehend an injury, which is *potentially* within the policy's scope, the insurer has a duty to defend. . . . 'Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true.'" 450 Pa. Super. at 15, 675 A.2d at 286. (emphasis in original) (citations omitted) The court held that since the complaint alleged Lebanon Coach designated routes and loading or unloading zones for the bus, and alleged Lebanon Coach knew or should have known of the dangerousness of the drop-off point before dropping plaintiff off, the complaint alleged an injury stemming from the "use" of the covered bus, and so Carolina Casualty must defend. Plaintiff's location at the time the car struck her was directly linked to where the Lebanon Coach driver stopped the bus, the court held.[2]

It appears to us that the Superior Court has consistently held that where a claim *may* be covered by a policy, the insurer must defend the case. In such cases, the court has *not* held, however, that the owner-operator of a motor vehicle has a duty to ensure that a passenger who steps out of the vehicle reaches his/her final destination safely. The court merely has held that when a claimant alleges that an owner-operator has such a duty, the insurer is obligated to defend the claim.

In *Knoud v. Galante,* 696 A.2d 854 (Pa. Super. 1997), the plaintiff was a passenger on a chartered bus that

---

2. We note that the Superior Court was asked to hold *only* on the issue of whether Carolina Casualty must defend Lebanon Coach, and was not asked to hold on the issue of whether, under the facts and the applicable law, Lebanon Coach breached its duty to plaintiffs. To the extent that the court's opinion addresses issues other than the insurer's duty to provide a defense, we consider it obiter dicta.

took a group of men from bar to bar for an evening. The men loaded the bus with beer and traveled from place to place, eventually returning to the parking lot where they had boarded the bus. Three of the men left the bus and got into an automobile, in which they traveled to a store's parking lot to make a phone call. Forty minutes after leaving the bus, the men had an auto accident and plaintiff's decedent was killed. His estate sued the bus company, alleging it failed in its duty to ensure that the plaintiff's decedent alighted at a safe location. On the trial court's denial of summary judgment to the bus company, the Superior Court reversed, holding that the bus company had no duty to protect its passengers from driving once they left the bus. The passengers chose their point of boarding and alighting, and many had made arrangements for their pickup by others at the parking lot where they alighted from the bus.

*Knoud's* facts are obviously not the facts of this case. In *Knoud,* adult men boarded a bus they had selected to carry them from place to place, and proceeded to incapacitate themselves with alcohol while riding the bus. When they left the bus, it was at a place of their own choosing, under circumstances they controlled. A significant period of time passed between the time they left the bus and the time of the accident, and another person took part in the activities, which then led to the injury sustained.

In this case, a minor boarded a bus that had been provided for her use as a member of the public. She proceeded to ride the bus to a place that had been determined by COLT as one of the places for leaving the bus. She left the bus at the place selected for her to do so, and within a minute or two, while standing on the public highway, was injured by the alleged neg-

ligent act of a third party. We turn to cases interpreting the Political Subdivision Tort Claims Act for further guidance.

The Tort Claims Act, in our view, functions akin to an insurance policy in that for certain losses caused by agents or employees of Commonwealth agencies, liability may be imposed upon the Commonwealth, and for other acts, liability is barred. Our legislature has dictated the terms of the "policy exclusions" in the Tort Claims Act, and the Commonwealth Court, not the Superior Court, is the Act's chief interpreter. We begin by examining the Supreme Court's holding in *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988).

Mrs. Love, then 73, was a passenger in a city-owned van operated by a city employee. She was blind in one eye and needed assistance in getting in and out of the van. She was leaving the van (apparently without assistance) when she missed a portable step placed at the van's side and fell to the street. After an award of damages at trial, the city appealed, and the Commonwealth Court reversed the award, holding that the city was immune from suit under the Tort Claims Act. The Supreme Court agreed, holding that the issue was whether the act of alighting from or entering into a motor vehicle constitutes "operation of a motor vehicle" within the meaning of 42 Pa.C.S. §8542(b)(1). The court held that the vehicle was not in operation at the time of Mrs. Love's misstep, and so the city was immune from liability under the Tort Claims Act.

The Commonwealth Court held in *Bryson v. Solomon,* 97 Pa. Commw. 530, 510 A.2d 377 (1986), that when a minor child was struck by a car while crossing a street after getting off a SEPTA bus, intending to board another SEPTA bus that was operated under contract

to the Philadelphia School District, the Tort Claims Act barred liability. The court held that the City of Philadelphia was not required by statute, regulation, or common law to erect traffic controls on streets, and thus was immune from suit under the "traffic control device" exception of the Tort Claims Act. The court noted that the school board was required under 75 Pa.C.S. §3345(h) to establish safe loading zones for school children, but since the absence of a safe loading zone is not a "traffic control device," the school district was immune from suit under the Tort Claims Act.

In the Commonwealth Court's 1991 holding on this case, *Lehman v. County of Lebanon Transportation Authority,* 143 Pa. Commw. 416, 599 A.2d 259 (1991), the court stated that the Supreme Court's holding in *Love v. City of Philadelphia* required it to find that the "motor vehicle exception" to the Tort Claims Act cannot apply to allow local agency liability when a passenger has left the motor vehicle in question and is crossing the street. Also, the court held, the transportation authority had nothing to do with the placement of traffic control devices, and so the "traffic control device" exception does not apply.

In *Brelish v. Clarks Green Borough,* 146 Pa. Commw. 232, 604 A.2d 1235 (1992), a child was crossing a state route to get to a school bus stop when a car hit her. Her parents sued, alleging the school district was negligent in establishing the school bus stop location. The school district won its motion for summary judgment in the trial court, and the parents appealed. The Commonwealth Court held that since the child was not a passenger on the school bus at the time of the accident, the motor vehicle exception to governmental immunity did not apply, and summary judgment had been properly granted.

In *Rubenstein v. SEPTA,* 668 A.2d 283 (Pa. Commw. 1995), the adult plaintiff was getting off a SEPTA bus when she slipped and fell. The bus company had stopped at its regular stop and none of the other passengers who got off fell. The trial court held that the bus was not "in operation" as required under the Tort Claims Act, and after a jury held in favor of plaintiff, entered judgment n.o.v. for SEPTA. On appeal, the Commonwealth Court affirmed, holding that since the plaintiff was injured as she was alighting from a bus that had stopped, the bus was not "in operation" as required for liability under the Tort Claims Act, and the trial court properly held for SEPTA. The court cited *Love; Miller v. Erie Metropolitan Transit Authority,* 152 Pa. Commw. 64, 618 A.2d 1095 (1992) and *Bazemore v. SEPTA,* 657 A.2d 1323 (Pa. Commw. 1995), in coming to its conclusion.

Our analysis of the Tort Claims Act cases shows that our appellate courts have been consistently quite conservative in finding liability under the Tort Claims Act when the allegedly negligent party is a Commonwealth or local agency. This is in sharp contrast to the appellate courts' findings in terms of a private insurer's duty to defend, or the availability of no-fault medical benefits to an accident victim. Still, we have yet to examine the question of whether the owner-operator of a common carrier, in the circumstances of this case, can be said to have a duty to ensure that a former passenger is safe until that former passenger reaches his/her final destination. For that, we turn to other sources.

The Restatement (Second) of Torts contains the following provision:

"*Section 314A. Special relations giving rise to duty to aid or protect*

"(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, and

"(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts §314A (1965).

The authors' third comment to this section is:

"*(c)* The rules stated in this section apply only where the relation exists between the parties, and the risk of harm or of further harm, arise in the course of that relation. A carrier is under no duty to one who has left the vehicle and ceased to be a passenger . . . ."

In Pennsylvania, the rule has been that a common carrier owes the highest possible duty of care to passengers, although it is not an insurer of its passengers' safety. *Connolly, supra.* Although there are few recent Pennsylvania cases on the topic of common carrier liability when plaintiffs have not been inside the vehicles, there are a number of older cases.

In *Klingensmith v. West Penn Railways Co.,* 279 Pa. 336, 123 A. 787 (1924), the plaintiff's decedent was standing in the street, waiting for a streetcar, when he was struck and killed by a car. The Supreme Court noted that under state law, motorists were forbidden to pass streetcars while they were loading or discharging passengers, and held that the streetcar company could not be expected to anticipate that motorists would disobey the law. The court reversed the trial court's judgment for the plaintiff.

In *O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 166 A. 868 (1933), the plaintiff was a passenger on a public bus, and was let out of the bus at midnight

484

on a stormy night. He had asked to be let out at the intersection of two streets, and the driver agreed to do so. The driver, however, let the plaintiff out about 250 feet from the place where the plaintiff asked to be discharged, and in the middle of the street, not at the curb. The plaintiff was struck by a passing car before he could reach the sidewalk. The Supreme Court held that the bus driver should have notified the plaintiff of where he was letting him off the bus, as he was letting him off the bus at an unusual place and the passenger could not see where he was getting off. Since the point of disembarkation was an "obviously perilous point," the trial court's judgment for defendant was reversed.

In *Maguire v. Doughty,* 326 Pa. 122, 191 A. 348 (1937), the plaintiff's decedent was walking toward a trolley car with the intent of boarding it when a car ran into both her and the trolley, killing plaintiff's decedent. The accident occurred at 2:30 a.m. The Supreme Court held that the common carrier was in no way negligent, and the driver of the car was the sole cause of the accident. The court also held that there was no evidence the common carrier stopped for passengers at an "obviously perilous point."

In *Reid v. Scranton Transit Co.,* 339 Pa. 225, 12 A.2d 553 (1940), the plaintiff was leaving the defendant's streetcar in mid-afternoon when his foot and leg were struck by a passing truck. The plaintiff alleged the streetcar company was negligent by discharging him in the middle of a street, at a place that was not safe because of traffic, and without warning him of the danger. The trial court entered a compulsory nonsuit against the plaintiff at trial, finding the streetcar company was not negligent and that plaintiff had been contributorily negligent. The Supreme Court held that the

evidence was that traffic passed on both sides of the streetcar, and that the streetcar company could not be expected to anticipate that the driver of a vehicle would disregard the law against passing streetcars. The court affirmed the trial court's holding that the defendant streetcar company had not been negligent.

In *Troy v. Scranton Transit Co.,* 368 Pa. 361, 81 A.2d 547 (1951), the plaintiff stepped off a bus operated by defendant about 100 to 150 feet beyond the usual bus stop. The time was 10:30 p.m. Plaintiff began running across the road after the bus moved away, and was struck by a motorist after she crossed the road's centerline. She alleged the bus company was negligent in permitting her to get off the bus at a place other than the usual bus stop. The court held that no evidence showed the place where the plaintiff got off the bus was dangerous, and the evidence showed the plaintiff was negligent, affirming the trial court's entry of compulsory nonsuit against the plaintiff.

In *Harris v. DeFelice,* 379 Pa. 469, 109 A.2d 174 (1954), the plaintiff asked the operator of a streetcar to be let off opposite an inn, which was not a regular stop, at about 2 a.m. The operator stopped the streetcar and let the passenger off, and the passenger waited until the streetcar moved off before proceeding into the roadway. The plaintiff went to the middle of the road, looked for traffic, then proceeded across the remainder of the road. Before he could get to his destination, he saw a car traveling toward him, and was struck by that car. The Supreme Court stated that the controlling question was whether the streetcar company discharged the plaintiff at a "manifestly dangerous place," and held that the evidence established it had not. In addition, the court held that the plaintiff acted

without due care for his own safety in proceeding once he saw the approaching car.

In *Coyne v. Pittsburgh Railways Co.,* 393 Pa. 326, 141 A.2d 830 (1958), the plaintiff alighted from a streetcar at 8 p.m. in October of 1951. The streetcar had stopped near an intersection, and the plaintiff immediately was struck by a car that had been following close behind. The streetcar had discharged its passenger about 90 feet past its usual stop. Justice Musmanno stated that, given the evidence adduced on the usual stopping place, "to discharge a passenger at night . . . at any point other than the regular car stop was to push that passenger into the jaws of a potential nutcracker." 393 Pa. at 331, 141 A.2d at 833. The court held:

"A motorman who is about to discharge passengers at a point not a regular car stop is required to exercise care commensurate with the surroundings so as to avoid introducing the passengers into any danger of which he is aware or which by the normal functioning of his senses and a normal desire not to see harm come to others, he should be aware." 393 Pa. at 333, 141 A.2d at 834.

The most recent case to which our attention has been directed which is remotely related to the issue of a common carrier's duty to a discharged passenger is *Anderson v. Shaughnessy,* 526 N.W.2d 625 (1995). There, after leaving her school bus, the minor plaintiff was injured by another child who shot her with a paintball gun. The school bus driver knew the tort-feasor had such a gun, but did not take it away from him. The Minnesota Supreme Court held that the school district had no duty to a child who had left her school bus except to deposit her at her scheduled destination in a manner designed to allow her safe crossing of streets after disembarkation. We note that the duty of

a school district to a school child was at issue, not the duty of a common carrier to a passenger.

After our thorough review of these cases, and the evidence of the matter now before us, we must conclude that defendant Lebanon Coach did not breach its duty to the minor plaintiff. This accident occurred in the daylight, and plaintiff safely got off the public transit bus at a site that was a regular stop on the bus route. Plaintiff had disembarked at that stop on numerous occasions previously and was one of several passengers who disembarked at that time. After leaving the bus, plaintiff walked with a few friends for a short distance on the sidewalk before entering into a marked crosswalk so that she and her friends could cross the street. She entered the street and stopped and looked for traffic for thirty seconds to one minute. (Lehman dep. pp. 20-30.) She was struck while standing in the public street. As in *Coyne, Reid,* and *Klingensmith,* a vehicle other than the common carrier struck the plaintiff while the driver was committing a violation of the Motor Vehicle Code.[3] As the Supreme Court determined in *Reid* and *Klingensmith* that common carriers could not be expected to anticipate motorists' violation of laws on passing streetcars, we find that Lebanon Coach cannot be expected to anticipate that a motorist would disregard the law respecting pedestrians in crosswalks.

Further, try as we might, we are unable to conclude from the undisputed facts and the recitation of events provided by the plaintiff herself that the location where defendant discharged its passengers was an "obviously

---

3. While we have granted defendant McKinney's motion in limine to bar the jury in this case from hearing about her traffic citations in connection with this accident, we note that she was charged with failing to yield to a pedestrian in a crosswalk, 75 Pa.C.S. §3542(a), and found guilty of the same.

488

perilous point" or a "manifestly dangerous place." To the contrary, this discharge site had apparently been a regular stop on this particular public transit bus run. Plaintiff and her friends in fact exited the bus without incident and were safely proceeding on the sidewalk for some distance prior to the accident en route to their final destination.

We thus will grant defendant Lebanon Coach's motion for summary judgment, deny plaintiffs' motion for summary judgment, and dismiss plaintiffs' claims against Lebanon Coach.

## ORDER

And now, December 1, 1998, upon careful consideration of the parties' motions for summary judgment, and their responses thereto, and the arguments presented in court, it is hereby ordered that the motion of plaintiffs is denied, and the motion of defendant Lebanon Coach is granted. Judgment may be entered in favor of defendant Lebanon Coach and against plaintiffs.