CATHERINE E. McMAHON, ADMINISTRATRIX (ESTATE OF RAYMOND J. McMAHON) *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND INGLIS, Js.

Argued December 6, 1949—decided February 7, 1950.

*Edwin H. Hall,* with whom was *Thomas J. O'Sulli-van,* for the appellant (defendant).

*Margaret Sigsway,* with whom was *Richard S. Wein-stein,* for the appellee (plaintiff).

JENNINGS, J.   The plaintiff had a verdict for damages for the death of her intestate, who jumped or fell from the open vestibule of a train of the defendant. She claimed that he was intoxicated to the point that the defendant was charged with keeping him under observation.   The defendant appealed from the denial of its motion to set aside the verdict and from the judgment.

The jury could have found the following facts: McMahon, the decedent, was a twenty-two-year-old navy veteran who worked in New York.   On December

31, 1946, he celebrated New Year's Eve there with a friend, McCloud. Both got drunk. About 3 a. m., McMahon decided to take McCloud to Norwalk so that they could have New Year's dinner with Mc-Mahon's mother. They took a train at Grand Central Station at 4:40 a. m. and were passengers thereon. It ran express to Mt. Vernon and thereafter stopped at every station. The trainman opened the trap and vestibule doors at Mt. Vernon and they remained open thereafter.

McMahon continued his drinking in the car. The defendant's trainman saw this and had one encounter with him when he tried to get into a rear car. The trainman stopped him and told him to go back to his seat. He did so. After the train left Greenwich, the seventh stop beyond Mt. Vernon, McMahon started for the toilet and staggered onto the platform in the vestibule. He was very drunk at this time. When McCloud saw McMahon leave the car he became frightened and went after him. He found him standing on the second step and tried to get him back, but to no avail. McMahon was laughing and singing, "Norwalk, here I come." The trainman appeared and added his efforts to those of McCloud with no result. The trainman then left to get the help of a policeman. He made no use of the emergency cord, which was available and, if pulled, would have stopped the train. McCloud turned away for an instant and when he looked again McMahon was gone. His body was found on the right of way.

The defendant has given no substantial reason why the rule enunciated in *Dokus* v. *Palmer*, 130 Conn. 247, 250, 33 A. 2d 342, does not control. It reads: "The duty of the defendants as a common carrier of persons was 'to use the utmost care consistent with the nature of its business to guard its passengers against all dan-

gers which might reasonably and naturally be expected to occur, in view of all the circumstances.' *Robinson* v. *Connecticut Co.*, 122 Conn. 300, 301, 189 Atl. 453. A common carrier, having upon its train a passenger who is so intoxicated as not to be able to look out for his own safety, when it knows or in the exercise of reasonable care should know his condition, is bound to exercise a degree of care for his protection commensurate with his inability to guard himself from danger." Whether the defendant exercised this care was a question of fact. *Dokus* case, supra, 253. In view of the condition of the decedent, the jury might reasonably have found the defendant negligent in leaving the trap door open. Negligent conduct of McMahon due to his intoxication, "the very condition against the dangers of which it was the duty of the [defendant] to guard him," would not bar recovery. *Dokus* case, supra, 252. Whether he was guilty of contributory negligence which did not result from his intoxication was also a question of fact for the jury.

The defendant assigned numerous errors in the charge but can only avail itself of the refusal of its written requests, since no objections were made at the conclusion of the charge. Practice Book § 156. These requests were to the effect that the defendant was not negligent in leaving the trap and vestibule doors open between stations. The court charged that this was a question of fact for the jury to decide in view of all the circumstances. The charge accorded with the general rule. A common carrier of passengers is under no legal obligation to provide vestibuled trains, but if it does so it has the duty of using reasonable care to maintain them in a reasonably safe condition. Whether it exercised that degree of care is a question of fact. *Bronson* v. *Oakes*, 22 C. C. A. 520, 525, 76 F. 734; *Crandall* v. *Minneapolis, St. P. & S. Ste. M. R. Co.*, 96 Minn. 434,

435, 105 N. W. 185; notes, 2 L. R. A. (N. S.) 645, 22 L. R. A. (N. S.) 313, 32 L. R. A. (N. S.) 346; 13 C. J. S. 1393. The only case cited or found which holds as a matter of law that it was not negligence to leave the trap and vestibule doors open between stations is *Blair* v. *Chicago, O. & P. R. Co.*, 205 Ill. App. 160, 166, not a court of last resort.

There is no error.

In this opinion the other judges concurred.