478

Mangini, et al. *v.* Southeastern Pennsylvania
Transportation Authority, Appellant.

Argued June 10, 1975. Before WATKINS, P. J., JACOBS,
HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH,
JJ.

*Matthew J. Ryan, III,* with him *Lewis H. Van Dusen, Jr., Joseph F. Keener, Jr.,* and *Drinker, Biddle & Reath,* for appellant.

*Allen L. Feingold,* for appellees.

OPINION BY JACOBS, J., September 22, 1975:

The minor plaintiffs in the present action were injured while riding defendant-appellant's trackless trolley when a number of unidentified assailants boarded the vehicle and attacked the passengers. We agree with the court below that the appellant, a common carrier, is liable for the minors' injuries due to the failure of its driver to act to protect his passengers. We will therefore affirm the judgment entered in favor of appellees.[1]

---

1. The court below entered judgment in the following amounts:

For Dolores Mangini, a minor by her parent and natural guardian, Dolores Mangini, $1,000.00; and for Dolores Mangini in her own right, $200.

At the time of the incident the minor plaintiffs were high school students attending St. Maria Goretti High School. In order to get to and from school, these students took the Tasker Street trackless trolley operated by the appellant Southeastern Pennsylvania Transportation Authority [SEPTA]. It is the testimony of both sides that certain neighborhoods through which the trolley must travel to transport the high school students represent a continuous source of violence and danger to buses and passengers. Prior to the incident with which we are here concerned, a number of complaints had been registered with both SEPTA and the police by the parents of children who found it necessary to use this line indicating concern for the safety of the children traveling on the trolleys. In response to these complaints, extra trolleys were run on the route when the school released its students, and the police were requested to superivse the transportation of the children. When available, police cars trailed trolleys carrying students through the dangerous neighborhoods.

There is a conflict in the testimony regarding the incident in which the injuries here complained of occurred. The minor plaintiffs testify that as the trolley pulled up to a stop which was across the street from a playground, a group of boys began to pelt the vehicle with bottles and other objects. When the front doors of the trolley were opened, about five boys boarded without paying a fare and ran down the aisle striking passengers. At the center of the trolley there is another door which

---

For Alice Scarlata, a minor by her parent and natural guardian, Alice Scarlata, $2,500.00; and for Alice Scarlata in her own right, $201.

For Deborah Viereck, a minor by her parent and natural guardian, Mary Viereck, $2,000.00; and for Mary Viereck in her own right, $87.00. (In the opinion of the court below, this amount was erroneously noted as $8,700.00).

The appellant does not claim that the judgment is excessive.

is used as an exit and is operated from the inside by stepping on a treadle. One of the invading boys depressed the treadle step causing the exit doors to open, and another group of approximately 15 more boys rushed into the trolley. These boys joined in the assault on the passengers. At some point during the fray, two of the minor plaintiffs were struck on the head with bottles and lost consciousness. The third was punched in the face. During the assault the passengers shouted to the bus driver urging him to drive on or assist them. The driver allegedly did not respond until the boys had fled from the trolley. He then closed the doors and drove a few blocks to a store where a woman called the police.

The driver of the trolley and other witnesses for SEPTA testify to a somewhat different series of events. The driver stated that he stopped at the corner by the playground in order to allow some passengers to disembark. No boys ran through the front doors when they were opened, but the center exit doors were opened, presumably by a passenger getting out. The driver and other witnesses pointed out that the trolleys are equipped with a safety feature which does not permit the vehicle to move when the central doors are open. Shortly after he stopped, while the trolley was immobilized by reason of the open center doors, the driver heard screaming and commotion among his passengers, and bottles breaking against the outside of the trolley. He was unable to see any fighting due to the people moving around in the aisles. As soon as the doors were closed, he moved the trolley a few blocks away where he called the SEPTA radio room, the center he is instructed to contact when trouble occurs on the route.

There is no dispute that appellant SEPTA is a common carrier and therefore held to the highest degree of care. *See Sommers v. Hessler*, 227 Pa. Superior Ct. 41, 323 A.2d 17 (1974). A public carrier is not an insurer of its passengers' safety, but liability is imposed for injuries resulting from negligent conduct on the part of

the carrier. *Sykes v. Southeastern Pa. Transp. Authority,* 225 Pa. Superior Ct. 69, 310 A.2d 277 (1973). In the case where a third person, whether a passenger or otherwise, acts in a violent, criminal or negligent manner, the carrier has a duty to protect the other passengers from his misbehavior to the degree possible. " 'It is [the duty of passenger carriers] to repress disorder . . . and in case there is any reasonable ground to apprehend that other passengers may suffer physical injury from the violence of disorderly passengers it is their duty to use every means at their command to protect other passengers and restrain, and if necessary remove . . . the disorderly parties.' " *Gerlach v. Pittsburgh Rys. Co.,* 94 Pa. Superior Ct. 121, 129 (1928), quoting *Barlick v. Baltimore & Ohio R.R. Co.,* 41 Pa. Superior Ct. 87, 92 (1909). If necessary, the employees of a carrier may enlist the assistance of willing passengers, police, or other authorities to quell a disturbance. *See La Sota v. Philadelphia Transp. Co.,* 421 Pa. 386, 219 A.2d 296 (1966); *Kennedy v. Pennsylvania R.R. Co.,* 32 Pa. Superior Ct. 623 (1907). When these measures are not employed and a passenger is injured, the carrier is liable if prior to the injury the conduct of the offending parties indicated a disposition to engage in violent, harmful behavior, giving rise to a reasonable apprehension of injury to other parties. *See Kerns v. Pennsylvania R.R. Co.,* 366 Pa. 477, 77 A.2d 381 (1951).

In the present case, appellant SEPTA has argued that the evidence is insufficient to show that prior to the injury the offensive individuals indicated a violent disposition sufficient to alert the driver to act for the protection of his passengers.[2] The trial judge, sitting without

---

2. SEPTA has also advanced the parallel argument that the admission of evidence concerning prior criminal incidents along the same trolley line was error. We find it unnecessary to consider this question since the evidence, as found by the judge in the court below, is sufficient to support a finding of negligence on the part of the driver in this particular incident without regard to prior

a jury, heard the two versions of the event and decided to credit the plaintiffs' testimony above that of the defendant. Upon reviewing the record, we can see no reason to question the lower court's findings. Therefore, it is apparent that the trolley driver was on notice that some form of trouble was developing from the time he stopped his trolley at the corner and a mob of boys began hurling objects against the side and the windows of the vehicle. At this show of violence, it became the driver's duty to protect his passengers by moving the trolley away from the crowd of assailants which was clearly too large for him to handle on his own. *See La Sota v. Philadelphia Transp. Co.*, supra. Instead he opened the trolley doors permitting five hoodlums armed with bottles, whose sole purpose was to assault the passengers and who had no intention of paying a fare or traveling on the trolley, to enter the trolley. When moving the trolley became an impossibility due to the operation of the locking mechanism connected with the center doors, the driver failed to make any attempt to control the wild disorder in his trolley or protect his passengers. He did not seek aid from passengers, or attempt to attract the attention of the police or others by sounding his horn, or calling for

---

violence or criminality along the route. Furthermore, the driver himself, testifying on direct examination for the defendant carrier, made the following statements:

"Q.  What did you think the trouble was?
"A.  Oh, my years of driving, I knew what the trouble was.
"Q.  What?
"A.  I knew there was a fight, a fight or something. . . . I knew someone was probably getting hit or getting throwed at . . . ."

These responses indicate a familiarity on the part of SEPTA's employee with those incidents testified to by plaintiffs' witnesses, which testimony is now objected to by appellant. However, the driver's testimony was brought out by appellant's own counsel on direct examination. Therefore, even if the admission of the evidence was error, it was cured by the appellant bringing the same evidence into the case. *McCabe v. Cannoe*, 304 Pa. 497, 156 A. 77 (1931).

help. Although the passengers were screaming and struggling with the intruders, he did not even get out of his seat to exert his influence. It was not until the melee had subsided and he had driven the trolley two blocks away that either he or a passenger telephoned for assistance.

It has been held to constitute a breach of duty on the part of a common carrier operating a bus line when the employee driver failed to control the passengers in an overcrowded bus, and as a result a passenger was knocked down and injured while attempting to disembark through the crowd. *La Sota v. Philadelphia Transp. Co.,* supra. Similarly, in *Gerlach v. Pittsburgh Rys. Co.,* supra, the carrier was found liable for injuries sustained by some passengers who became involved in a fight with other passengers, when the belligerent attitude of the assailants should have been apparent to the defendant carrier's conductor. In both these cases, and in *Kennedy v. Pennsylvania R.R. Co.,* supra, the carrier's employees were duty bound to do all that was possible to stop the riotous or violent conduct of the third parties in order to prevent injury to the passengers. In the present case, the employee driver failed to make any effort to avoid or terminate the escalating violence of the situation with which he was faced. The neglect of SEPTA's driver toward his passengers, to whom he owed the highest degree of care, is a breach of duty which resulted in injury to the three minor plaintiffs. We can therefore see no error in the lower court's finding of negligence on the part of the appellant herein.

Judgment affirmed.