**Joseph J. KNOUD, Sr., Barbara Barry, Brenda Knoud and Heidi Anderson, in their own right and as Co–Administrators of the Estate of Joseph J. Knoud, Jr., Deceased and John J. Andiario, in his own right and as Administrator of the Estate of Joseph Michael Andiario, Deceased, Appellee,**

v.

**Craid A. GALANTE and Delaware County Transportation Service, Inc., Appellee,**

**Appeal of: Delaware County Transportation Service, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 1997.

Filed June 3, 1997.

Reargument Denied Aug. 1, 1997.

Gino P. Mecoli, Philadelphia, for appellant.

Lenard A. Sloane, Media, for Knoud, Barry, Anderson and Andiario, appellees.

Before BECK, SAYLOR and MONTEMURO,* JJ.

MONTEMURO, Judge:

This is an appeal by permission, pursuant to 42 Pa.C.S. 702(b), from the Order of the

* Retired Justice assigned to Superior Court.

Delaware County Court of Common Pleas denying the motion of Appellant, Delaware County Transportation Service, Inc., for summary judgment. In its certified issue for review, the trial court asks this Court to determine "[w]hether, under the specific facts of this case, a common carrier has a continuing duty to intoxicated passengers who have alighted from the bus and are subsequently killed in a motor vehicle accident." (Trial Ct. Order 2/27/96). For the reasons set forth below, we conclude that there is no continuing legal duty.

The underlying action stems from a fatal motor vehicle accident which occurred after the occupants left a bachelor party. The uncontroverted facts reveal the following. On March 14, 1992, the decedents and approximately twenty-five invited friends boarded a school bus at the Glenolden Elementary School parking lot in Delaware County, Pennsylvania. One of the bachelor party participants had chartered the bus and its driver through a contract with Delaware County Transportation Services, Inc. (DCTS) and Leo F. Byrne Transportation Company; the bus was chartered for five hours to transport the bachelor party participants to various bars and night clubs and then return them at the end of the evening to the predesignated Glenolden Elementary School site. The participants loaded the bus with approximately ten to twenty cases of beer which they consumed during their five hour bus ride, at the same time stopping at four to five bars in the Philadelphia area.

At approximately 2:30 a.m., March 15, 1992, the bus returned to the Glenolden Elementary School lot and the entire party alighted. Three of the participants, Joseph Knoud, Joseph Andiario, and Robert Markunas, then entered a Jeep belonging to Craig Galante which was parked in the school lot. Although there is some variation as to where the men went after they left the school, it is clear from the record that they made at least one stop in an Acme parking lot so that Joseph Knoud could call his girlfriend. After

they left the Acme lot, however, Galante, who was at the wheel, lost control of the vehicle and crashed into a concrete wall, killing passengers Knoud and Andiario. The accident occurred forty minutes after the men alighted from the bus and left the school lot.

On September 15, 1993, Appellees, the administrators of the Knoud and Andiario Estates, filed an amended complaint requesting punitive damages and asserting negligence against Craig A. Galante,[1] Delaware County Transportation Service, Inc. (DCTS), and Leo F. Byrne Transportation Company, Inc. arising from the fatal motor vehicle accident. Appellant filed preliminary objections which were denied by Order dated July 27, 1994. On September 1, 1995, Appellant filed a Motion for Summary Judgment claiming that DCTS owed no duty to the decedents at the time of their death. This motion was denied by Order dated January 29, 1996, and, on February 27, 1996, pursuant to 42 Pa.C.S. 702(b), the trial court judge certified its January 29 Order for appeal. On May 24, 1996, this Court granted Appellant's Petition for Permission to Appeal.

Our review of a summary judgment decision is plenary. *Gamble Farm Inn, Inc. v. Selective Ins. Co.,* 440 Pa.Super. 501, 504, 656 A.2d 142, 143 (1995). Summary judgment is properly entered where the uncontroverted allegations of the pleadings and other permissible materials such as depositions, answers to interrogatories, admissions, and affidavits reveal that there is no genuine issue of material fact and the that movant is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b), 42 Pa.C.S.; *Burke v. Yingling,* 446 Pa.Super. 16, 19, 666 A.2d 288, 289 (1995). Additionally, as in the instant case, "[i]t is clear that if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." *Godlewski v. Pars Mfg. Co.,* 408 Pa.Super. 425, 431, 597 A.2d 106, 109 (1991).[2] We must reverse the trial court's

1. The trial court docket indicates Appellees have since settled their claims with Galante.

2. Although it became effective after the initiation of this suit, Pa.R.C.P. 1035.2(2) now explicitly

allows the entry of summary judgment where the party bearing the burden "has failed to produce evidence of facts essential to the cause of action. . . ."

ruling on a motion for summary judgment if the trial court has committed an error of law or a clear abuse of discretion. *Kelly by Kelly v. Ickes,* 427 Pa.Super. 542, 547, 629 A.2d 1002, 1004 (1993).

In this case, the trial court denied Appellant's Motion for Summary Judgment and asks this Court to determine whether Appellant's duty of care to its passengers continued after the intoxicated participants alighted at the school lot and entered a separate vehicle.

■ Any action in negligence is premised upon the existence of a duty owed by one party to another. *Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 8, 564 A.2d 1244, 1248 (1989). With regard to the duty of a carrier, it is a well-established principle of law that a carrier, whether common or contractual, is held to the highest degree of care in carrying its passengers to their destination and enabling them to alight safely. *Coyne v. Pittsburgh Rys. Co.,* 393 Pa. 326, 329–30, 141 A.2d 830, 832 (1958). A carrier's duty ends when the passenger has had " 'a reasonable opportunity to alight and pass out of danger.' " *Reilly by Reilly v. Southeastern Pa. Transp. Auth.,* 335 Pa.Super. 488, 491, 484 A.2d 1390, 1391 (1984) (quoting *Harris v. DeFelice,* 379 Pa. 469, 473, 109 A.2d 174, 176 (1954)) (holding that although Appellant argued carrier owed no duty when accident occurred, court properly charged jury on duty of carrier since testimony conflicted regarding whether, when the passenger alighted, he immediately ran in front of the bus or took clear path to sidewalk and then turned back and ran). *See also Coyne,* 393 Pa. at 333, 141 A.2d at 834 (holding carrier that discharges passengers at a point which is not a regular stop has a duty to exercise care commensurate with the surroundings so as to avoid introducing passengers into any danger of which driver is aware or should be aware); *Lebanon Coach Co. v. Carolina Casualty Ins. Co.,* 450 Pa.Super. 1, 675 A.2d 279, 290 (1996) (holding duty of carrier to minor continued after she alighted from the school bus but only until she reached the safety of the other side of the street she had to cross to reach her school); *Tyler v. Insurance Co. of North America,*

311 Pa.Super. 25, 457 A.2d 95 (1983) (holding shoulder of the road was the place of safety where carrier's duty to allow passenger to safely alight would end; thus carrier duty to passenger existed where bus stopped five feet *away* from the shoulder, and when passenger alighted, she took four steps and was struck by a passing motorcycle).

■ Further, we note that although a carrier is not an insurer of its passengers' safety, our courts have held that a carrier has a duty to protect its on-board passengers from the violent or criminal behavior of third persons to the degree possible which may include: quelling a disorder which may result in undeserved injury to a patron; moving the carrier away from a crowd of assailants; or restraining or ejecting disorderly passengers. *See, e.g., La Sota v. Philadelphia Transp. Co.,* 421 Pa. 386, 219 A.2d 296 (1966) (concluding that when it became evident the "commotion" on carrier was getting out of hand, driver had duty to preserve order and protect passengers from violence of others by quelling the disorder or ordering "troublemakers" to leave the carrier); *Mangini v. Southeastern Pennsylvania Transp. Auth.,* 235 Pa.Super. 478, 344 A.2d 621 (1975) (holding duty to protect passengers by moving carrier away from mob of boys throwing objects against it). Essentially, other than the duty to protect the passengers while they are on board the carrier, it is clear from a review of Pennsylvania precedent, that this duty continues only so far as to provide a safe ingress and egress from the carrier. *Acton v. Pennsylvania–Reading Seashore Lines,* 138 Pa.Super. 605, 607, 11 A.2d 203, 204 (1940).

■ Appellees contend, however, that Appellant's duty to the passengers continued beyond their exit from the bus because, upon completion of the five hour trip, the driver "abandoned" the "completely intoxicated" passengers with their cars, and, therefore, the passengers did not alight at a safe location. (Appellees' Brief at 14). For support, Appellees rely heavily upon *Warren v. Pittsburgh & Butler Ry. Co.,* 243 Pa. 15, 89 A. 828 (1914) and *Cassaro v. Zodiac Tour and Travel, Inc.,* 4 D. & C. 4th 132 (1989). In *Warren,* a visibly intoxicated passenger boarded

a train, and when asked for additional fare, refused. *Id.* at 17, 89 A. at 829. Upon a second request for the fare, the passenger refused either to pay the fare or name his destination, and the conductor ordered him to leave the train. *Id.* The intoxicated passenger, who was incoherent and staggering, was left on a road 13 feet wide, on one side of which was the defendant's track and a small, vacant way station. *Id.* The passenger lingered for approximately an hour, then attempted to walk off when, several hundred feet from the station, he staggered diagonally across the road onto the tracks and fell in front of an approaching train. *Id.* at 18, 89 A. at 829. After trial, a verdict was rendered and judgment entered in favor of the decedent, and the defendant-railway company filed for judgment notwithstanding the verdict which was denied. *Id.* at 16, 89 A. at 828. In affirming the judgment, our Supreme Court recognized that when a carrier is aware of the intoxication of a passenger, its duty requires the carrier to give the passenger that degree of attention which consideration for his safety demands beyond that ordinarily bestowed on passengers. *Id.* at 19, 89 A. at 829.

In the instant case, Appellees seize upon this duty language in *Warren* and argue that because of their condition, the parking lot of the elementary school was not a safe location to return the bachelor party participants because they were "abandoned" with their cars, and, therefore, left to drive home drunk which ultimately caused the fatal automobile accident. Essentially, under the facts of the instant case, Appellees argue that Appellant's carrier duty should extend to protecting the participants from drinking and driving once they alighted from the bus.[3] To this end, Appellees rely upon *Warren*, as well as cases from other jurisdictions,[4] which recognize a carrier's "higher duty of care" for intoxicated or disabled passengers. *See Id.* at 19, 89 A. at 829 (stating that carrier's employees had a higher duty of care when passenger is intoxicated than when he is "in the full possession of his faculties.").

First, we note that the instant case is immediately distinguishable from *Warren* and therefore Appellees' reliance is misplaced. In *Warren*, our Supreme Court reasoned that it was for the jury to decide whether, in light of the passenger's intoxication, "the conductor was not justified in requiring him to leave the car at a place of danger, *not his destination.*" *Id.* at 18, 89 A. at 829. (emphasis added). The focus in *Warren* was on the special duty of a carrier to an intoxicated passenger whom the carrier's employees ejected at a place that was *not* the passenger's intended destination. Therefore, the question was whether, in view of heightened duty to intoxicated passengers, and despite the carrier's right to eject the passenger, its employees exercised the requisite due care in selecting an *alternate* location at which to eject the inebriated passenger.

In the instant case, the bachelor party participants were returned to the Glenolden

---

3. Appellees state that they "do not ask this Court to redefine or expand the scope of a common carrier's duty to its passengers; rather, Appellees assert that under the facts of this case, the Appellant breached its duty of care to the Decedents by permitting the unchecked consumption of alcohol, then leaving them with their cars, even after it was recognized that they were grossly inebriated." (Appellees' Brief at 19). Appellees fail to realize, however, that without a duty there can be no liability for breach. Therefore, this Court must first determine whether, *at the time of the accident*, Appellant owed a duty to the decedents.

4. We note that the cases cited by Appellees from other jurisdictions are not binding authority upon this Court, and although they are not inconsistent with established Pennsylvania caselaw, because they differ significantly from the facts in the instant case, we find that they are irrelevant and refuse to consider them as persuasive authority. Appellees' cited "authority" addresses either the actions of a carrier while an intoxicated passenger is still on board the carrier, or a carrier's duty of care to an intoxicated passenger whom it allows to alight at a location which is *not* their intended destination. *See, e.g., Dokus v. Palmer,* 130 Conn. 247, 33 A.2d 315 (1943) (before train stopped, carrier employee opened door to train steps and intoxicated passenger stepped off moving train); *McMahon v. New York N.H. & H.R. Co.,* 136 Conn. 372, 71 A.2d 557 (1950) (carrier employee failed to close train door and intoxicated passenger fell off moving train); *Johnson v. New Orleans Public Service, Inc.,* 139 So.2d 7 (La.App.1962) (duty of carrier to intoxicated passenger who was killed after he was permitted to alight at a location which was *not* his intended destination).

Elementary School parking lot. This return location was predetermined by the participants, not the carrier, and, therefore, at the end of the five hour trip, the carrier returned the participants to this designated safe location. Unlike in *Warren*, Appellant did not eject the participants at an unfamiliar or strange location. Rather, even before they drove their cars to the school lot, loaded the cases of beer onto the bus, and drank for five hours, these adult participants were well aware of when and where they would return. In fact, there is ample evidence from Appellees' witnesses that most of the participants arranged to be picked up upon their return at 2:30 a.m. in the school lot. (Deposition of Ken Marshall at 11, 20, 22; John Gerald Frampton at 5, 12; David DiCampli at 11; Doug Gardner at 18; Charles Ward at 6). Therefore, consistent with applicable caselaw, we find that Appellant's duty ended when the participants safely alighted from the bus at a safe location: their predetermined return site.

An extension of this duty, which would place liability upon Appellant for a fatal motor vehicle accident that occurred forty minutes after the participants alighted from the carrier, entered another vehicle, and stopped at other locations, would defy logic as well as established precedent. Nevertheless, Appellees attempt to extend this duty by relying upon *Cassaro v. Zodiac Tour and Travel Inc.,* 4 D. & C. 4th 132 (1989), discussing the duty of social hosts, which Appellees assert is "nearly identical to the case at bar." (Appellees' Brief at 26). In *Cassaro,* the passengers chartered a bus from the defendant bus company to provide transportation to and from a football game. *Id.* at 133. Alcoholic beverages were brought onto the bus and consumed during the trip, and, after the game, the bus returned safely and discharged its passengers at the predetermined location. *Id.* After leaving the bus, however, plaintiff's decedent, who was intoxicated, entered his car and was later involved in a fatal automobile accident. *Id.* at 134. The trial court denied the defendant's motion for judgment on the pleadings, finding that plaintiff sufficiently stated a cause of action against defendant for liability as a social host of a "rolling party." *Id.* at 136, 140.

Apart from the question of whether an *appellate court* would find the bus company to have been a social host, and, aside from the fact that *Cassaro* is not binding authority upon this Court, this seemingly factually identical case, upon which Appellees rely so heavily, is also clearly distinguishable from the instant scenario on one very significant point; in *Cassaro,* the intoxicated passengers were minors. As cited by *Cassaro,* in *Congini by Congini v. Portersville Valve Co.,* 504 Pa. 157, 470 A.2d 515 (1983), our Supreme Court held that a host who knowingly serves alcohol to a minor to the point of intoxication is *per se* negligent, and a cause of action exists against the social host for the injuries sustained by a third party who was subsequently injured in an automobile accident caused by the intoxicated minor. *Id.* at 162, 470 A.2d at 518. The Court reasoned that "an actor's negligence exists in furnishing intoxicants to a class of persons legislatively determined to be incompetent to handle its effects." *Id.* at 163, 470 A.2d at 518. A social host's liability is very different, however, when, as in the instant case, adult guests are involved.

In *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983), our Supreme Court, declined to extend common law liability to the social host who serves alcohol to a visibly intoxicated adult guest, even when the host knows, or should know, that the guest intends to drive a motor vehicle. *Id.* at 148, 470 A.2d at 511. The Court reasoned that "the great weight of authority supports the view that in the case of an ordinary able bodied man it is the consumption of the alcohol, rather than the furnishing of the alcohol, which is the proximate cause of any subsequent occurrence." *Id.* at 148, 470 A.2d at 510. Therefore, the Court affirmed the order of the trial court which dismissed the personal injury action arising from a motor vehicle accident initiated by a third party against the social host who served alcohol to the defendant driver. *Id.* at 148, 470 A.2d at 511.

In the instant case, Appellees argue that, like a social host, Appellant "created an 'open bar on wheels' for its customers, encouraging them to drink and use the bus service rather

than drinking and driving themselves." (Appellees' Brief at 27). Therefore, Appellees contend, this created a duty to the participants beyond allowing them to alight safely from the bus because the bus driver "knew of and acknowledged the danger inherent in drinking and driving, yet allowed the passengers to become intoxicated on the bus and then unloaded them in a parking lot to drive home." (Appellees' Brief at 27). We do not agree. It is uncontroverted that the decedents were adults of twenty-one years or older, and, unlike a social host, the bus company did not furnish or serve alcohol to the participants. These adult participants planned this five hour bachelor party bus trip, chartered the bus to transport them to different bars and night clubs, designated a pick-up and drop-off site, and furnished their own alcohol consisting of ten to twenty cases of beer; indeed, getting drunk while utilizing the service of the bus as designated driver was clearly their plan and their purpose.

In addition to our legal analysis, however, we cannot ignore the deeply tragic circumstance that this case presents; alcohol-related deaths are as unfortunate as they are unnecessary. We note, however, that Appellees' attempt to place responsibility upon Appellant for permitting the passengers to drink and drive once they alighted from the bus ignores the fact that the decedents were adults, not minors, who were responsible for their own actions. Indeed, by their very actions, the occupants of Galante's vehicle defeated the very purpose for which they chartered the bus. Where the law refuses to extend liability to a social host who serves an intoxicated adult guest even when the host knows the guest may drink and drive, here, there can be no liability for a fatal accident that occurred *after* the carrier had fulfilled its duty by returning the participants to their self-designated safe location, even if the carrier knew the participants might drink and drive. If, as Appellees urge, we were to extend the duty in the instant case beyond requiring the carrier to transport its passengers safely and allow them to alight at a safe location, where would this duty end? Would the carrier's duty end once the passengers arrived at home safely, or perhaps after they sobered up? Under Appellees' infinitely extended liability, it is conceivable that the carrier would be found responsible for the death of a passenger who arrived home safely, but, because of his intoxicated condition, slipped and fell inside of his home and died. If passengers, such as those in the instant case, are not permitted to designate their own safe location or return site, what would be considered a safe location to return intoxicated passengers which would effectively terminate the carrier's duty, and who would make this determination? These hypothetical situations illustrate how clearly illogical it would be for this Court to extend the carrier's duty as Appellees suggest.

Therefore, we conclude that at the time of this tragic and fatal accident, no duty existed between Appellant and Appellees. Under the facts of this case, Appellant did not have a continuing legal duty to the intoxicated passengers who left the bus and were subsequently killed in a motor vehicle accident.

Order reversed. Remanded for entry of appropriate order consistent with this opinion. Jurisdiction relinquished.

SAYLOR, J., did not participate in the decision of this case.

