[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants are respectively an employee, the permittee and backer, of a restaurant liquor premises known as Cobb's Mill Inn, Inc. The plaintiffs' decedent (hereinafter "Ketcham") was a bar patron who at the time the bar closed was in a perceived intoxicated condition. In accordance with restaurant policy Ketcham was given a ride home by the defendant Kane whose was an employee of the backer. Kane drove into Ketcham's driveway, Ketcham alighted from the vehicle and while he was in the process of walking toward the stairway which led to his house, Kane drove off. The next morning Ketcham was found dead about 50 feet from the stairway.
The issue in this case is whether having undertaken to transport Ketcham from the restaurant to his home, the defendants, as agents and principals, owed a duty to exercise reasonable care in securing Ketcham's safe return home.
As a preliminary matter it is noted that on September 5, 1995 this court (Rush, J.) denied the defendant's motion to strike the complaint on the grounds that on the basis of the plaintiffs' allegations as framed the issues raised by the motion should be determined by some other form of procedure.
The plaintiffs, who are the administrators of Ketcham's estate, argue that the defendants were obligated not to leave Ketcham in a worse position than he would have been in had they CT Page 6906 not taken it upon themselves to drive him home.
Whether the defendants actually left Ketcham in a worse position is a question of fact which the plaintiffs argue cannot be decided on a motion for summary judgment. Moreover, they argue that the injuries suffered by Ketcham and the manner in which they were sustained were clearly foreseeable to a reasonable person and thus the question of the defendants' negligence is a question of fact to be decided by the trier of fact.
"First, it is necessary to determine the existence of a duty, and then, if one is found, it is necessary to evaluate the scope of that duty. The existence of a duty is a question of law and only if such is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant. " (Citations omitted; internal quotation marks omitted.) Maffucciv. Royal Park Limited Partnership, 243 Conn. 566 (1997).
Our Supreme Court has declined to recognize a common law cause of action in negligence against a purveyor of alcohol. Such a claim "has uniformly failed for the reason that the subsequent injury has been held to have been proximately caused by intervening act of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury." (Citations omitted; Internal quotation marks omitted). Bohan v. Last, 236 Conn. 670 (1996). There are two lone exceptions to this rule of common law immunity. The first is the statutory remedy provided by the Dram Shop Act[1] which holds the retailer liable for serving or selling intoxicated beverages to an intoxicated person who then causes injury to a third party. But it clearly does not authorize recovery for injuries or property damage sustained by the intoxicated person him/herself. Nolan v. Morelli, 154 Conn. 432,436 (1967). The second exception holds that in appropriate circumstances a purveyor of alcohol to a minor may be liable for negligently supplying a minor with the alcohol. Bohan v. Last,
supra; Ely v. Murphy, 207 Conn. 88, 93-95 (1988). Neither exception to the general rule of immunity is involved in the present case.
As noted above, the plaintiffs argue that the conduct of the defendants resulted in Ketcham's being placed in a worse position CT Page 6907 than if the defendants had not acted. Specifically, it is the plaintiffs' claim had the defendants not persisted in offering Ketcham a ride Ketcham would have been able to stay at the bar under the supervision of others; they assert instead, Kane took Ketcham home and negligently abandoned him in an intoxicated condition outside his home on a dark night. At the very least, they contend that Kane should have waited in his car until Ketcham made it safely into his house. Beyond that they suggest that Kane had a duty to assist Ketcham up the stairs and into his house.
In an effort to avoid the limits of liability which our courts have set for purveyors of alcohol, the plaintiffs have cast the defendants in the role of volunteers whom they admit in the first instance had no duty to provide Ketcham with safe passage. However, once having undertaken and assumed the task, they argue implicitly, that their status as alcohol purveyors ceased and they became instead, good samaritans. The supporting documentary evidence shows and the plaintiffs in fact admit that during this entire time the defendants were in the exercise of their responsibilities as managers and employees of an establishment which sold alcoholic beverages. Nevertheless, the plaintiffs urge that by virtue of §§ 323 and 324 of the Restatement of Torts a duty was imposed by law.
Section 323 of the Restatement (Second) of Torts states:
 One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
 a) his failure to exercise such care increases the risk of such harm, or b) the harm is suffered because of the other's reliance on the undertaking.
Section 324 of the Restatement (Second) of Torts states:
 One who being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm to him by CT Page 6908
 a)the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
 b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.
In advocating these restatement rules plaintiffs rely on several reported decisions both within and without Connecticut.Dokus v. Palmer, 130 Conn. 247, 250 (1943) (intoxicated passenger fell through trap doors that were open in anticipation of a train's arrival at a railroad station); McMahon v. N.Y.H. RR.Co., 136 Conn. 372, 375 (1950) (facts similar to Dokus;Daughenbaugh v. Bethlehem Steel Corp., 891 F.2d 1199 (6th Cir. 1989) (seamen being led back to his ship fell into lake); Pencev. Ketchum 326 So.2d 831 (La. 1976) (patron struck by automobile after being ejected from bar); Sarracino v. Martinez,870 P.2d 155 (N.M. 1994) (passenger in truck assaulted after she was left alone in parking lot); Parvi v. City of Kingston, 362 N.E.2d 960
(N.Y. 1997) (police officers left intoxicated persons at abandoned golf course); Russell v. City of Columbia,406 S.E.2d 338 (So. Car. 1991) (intoxicated person allowed to wander off);Octillo West v. Superior Court, 844 P.2d 653, 656 (Ariz.App. Div. 1, 1992).
None of these decisions apply to the factual structure of this case because except for Pence v. Ketchum none of them involved a purveyor of alcohol beverages. In Pence the Louisiana court explicitly rejected as unsound the Connecticut view that the consumption of alcohol by the patron and not the act of the purveyor in serving it is the proximate cause of any injuries suffered by the intoxicated patron. Bohan v. Last supra at 670. On this basis alone the Pence case is unpersuasive.
While Connecticut courts may well embrace the Restatement sections 323 and 324 in the context of a negligent volunteer,Bohan v. Last, supra at 679, it is improbable that our appellate courts would extend the principle in favor of an intoxicated consumer and against the purveyor from whom he purchased.
On the contrary, Connecticut has a long history of providing no "recompense in damage [for] an injury to an intoxicated person or his property resulting from his/her own over-indulgence in CT Page 6909 intoxicating liquor" for the simple reason that to do so "might quite properly be felt by the general assembly to encourage, rather discourage, such overindulgence." Nolan v. Morelli supra at 440. "For many years the law of this state provided broad immunity from legal liability for those who contribute to the carnage that drunk drivers inflict on innocent users of our highways and byways." Bohan v. Last, supra 676.
In Nolan v. Morelli the plaintiff's decedent died when he lost control of his car and struck a tree after the defendant sold him intoxicating liquor. In rejecting the plaintiff's common law claim that the alcohol purveyor was negligent in causing the decedent to become intoxicated our Supreme Court stated "that plaintiff has pointed to no common law duty resting on these defendants, as sellers, proprietors or otherwise, to guard against injuries sustained at unknown distances from the defendants' premises and at places or under circumstances wholly outside the defendants' knowledge or control." Id. at 443.
In this case, although there is no claim based on a theory of negligent dispensation of alcohol, as noted above, the deposition testimony establishes that the defendants were carrying out their well defined policy of providing "safe escort" for any patron who had become intoxicated. The deposition testimony further demonstrates that the defendants were rendering a business, as distinguished from a gratuitous, service to their patron who had overindulged in alcohol which they had served. This service cannot be separated from but indeed was a distinct part of the defendants' service of alcoholic beverages to its customers. Thus, the defendants were not acting in a purely good samaritan capacity. It is obvious that an alcohol purveyor has a right to adopt a practice reasonably calculated to limit and even avoid exposure to liability under § 30-102.
To impose a duty of care on an alcohol purveyor under the circumstances of this case would produce highly undesirable consequences. For example, under the plaintiff's theory the creation of such a duty would inevitably encourage an alcohol purveyor to leave an intoxicated patron to fend for himself/herself at closing time thus placing the patron and third persons at risk of injury. The imposition of such a duty would discourage the voluntary and salutary practice of providing escort service for persons found to be in an intoxicated condition. Such a result will of course produce more highway carnage and thus more litigation under the Dram Shop Act. CT Page 6910
Apart from the policy consideration mentioned above there is a very practical problem which is inherent in the effort to define the contours of the duty. The difficulty of such an endeavor is apparent from the plaintiffs' own argument. At page 11 of their brief they argue as a threshold matter that the defendants' first duty was to have permitted Ketcham to remain safely inside the restaurant "where there were others to oversee his safety". Obvious questions generated by this option renders it totally unacceptable as an exercise in reasonable care. With whom would Ketchum have been left? Who would have been responsible for him? What would happen to him after the restaurant closed?
On the same page the plaintiffs next argue that the defendants had a duty to make certain that Ketchum "made it safely inside his house". Did that duty include lending him physical support as he climbed the stairs to prevent him from falling? Were the defendants required to see him inside the house, remain with him to protect him from harming himself, bar the door to prevent him from wandering outdoors?
Finally, at page 14 they argue that "at the very least the defendants should have waited in the driveway until certain that Ketchum was safely inside his house. Assuming that the defendants had waited, would they have satisfied their duty if they sat and watched him stumble and fall on the stairs or would their duty have required them to render emergency assistance?
Under a similar set of facts the Georgia Court of Appeals held that to impose such a duty of care on an alcohol provider would require the provider not only to get Ketchum home safely "but also of tucking him in bed, locking his bedroom door and securing the keys to his truck or setting up an all night vigil in swing shifts to make sure he didn't leave. This would be nonsense. People would laugh at the law if it required such a thing. Fletcher Guano Co v. Vorus, 73 S.E. 348 (Ga.App.Ct. 1911)." Southern Bell Telephone Telegraph Co. v. Altman,359 S.E.2d 385, 386 (1987).
On the basis of the foregoing analysis the motion for summary judgment must be granted.
MOTTOLESE, JUDGE. CT Page 6911